WESTERN INDEMNITY CO. et al. v. BERRY. (No. 5946.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 9, 1918.)

MUNICIPAL CORPORATIONS ⟨∞⟩705(12)—JITNEY BUSSES—LIABILITY OF OWNER AND SURETY FOR INJURIES.

Where a city ordinance, in effect, provided that if a jitney bus owner's servant put another man in his place without authority from the owner, the owner should suffer for such substitute's negligence, rather than the passengers and public, and required the owner to give bond, the owner of a jitney and the surety on his bond were liable for injuries to a pedestrian on a sidewalk, injured by the defective condition of the bus when operated by the driver for one who operated the car for the owner on a percentage basis, with a guarantee of $2.50 a day, the ordinance requiring the operation of the bus on certain schedules under penalty of forfeiture of license, so that the operator on a percentage basis had to secure some one to relieve him at meal times.

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Suit by T. C. Berry against the Western Indemnity Company, M. Canet, and another. From a judgment for plaintiff, the defendant company and Canet appeal. Affirmed.

Terrell & Terrell and Jno. W. Turner, all of San Antonio, for appellants. Perry J. Lewis, H. C. Carter, Champe G. Carter, and Randolph L. Carter, all of San Antonio, for appellee.

MOURSUND, J.    T. C. Berry sued M. Canet, Chas. Russell, Jr., and the Western Indemnity Company for damage on account of injuries sustained ·by him while a passenger on an automobile owned by M. Canet and alleged to have been operated by Chas. Russell as agent of said M. Canet in the jitney service as a common carrier.

Plaintiff alleged that the automobile was suddenly turned into the curb and overturned, throwing plaintiff to the ground. The specific acts of negligence alleged were: (1) That the car was being operated at a negligent and dangerous speed, contrary to the criminal ordinances of the city of San Antonio; (2) that the automobile was in a defective and dangerous condition, with a serious defect in the steering gear, it being alleged that both defendants knew of such defect or by the exercise of ordinary care could have known of it, and nevertheless negligently operated the automobile and failed to repair the defect; (3) that Russell turned into the curb and failed to turn off the power and apply the brakes; (4) that Canet was negligent in permitting Russell to operate the automobile as Russell was a reckless and incompetent driver, and at the time was not 18 years of age as required by ordinance of the city. Plaintiff alleged that "in operating said automobile as aforesaid, Charles Russell, Jr., was acting in the course of his employment as an agent of M. Canet."

The Western Indemnity Company was made a party defendant by reason of the execution by it of a bond payable to persons injured in said automobile, while negligently operated as a jitney. Said bond was attached to the petition, and was for the sum of $5,000.

Defendant M. Canet and Western Indemnity Company answered separately by general demurrer, general denial, and specially denied that the defendant Russell was the agent of M. Canet, and further denied any negligence by Canet as to the defects alleged and as to the hiring of Russell. It was further alleged that contrary to plaintiff's complaint, defendant Canet had discontinued the operation of said car as a jitney a short while before the accident and had leased same to one F. J. Fuessell at a flat rental of $2.50 per day; that Russell was an employé of Fuessell's and Canet did not even know him. The Western Indemnity Company adopted Canet's answer and pleaded that as it was liable under its bond for such damages only as might be occasioned by the negligent acts of the principal, Mr. Canet, his agent, or employé, and as it appeared that the defendant Russell was not such agent or employé, no liability existed against it as surety. It further pleaded that the leasing of the jitney by Canet to Fuessell without its knowledge or consent operated as a release of its liability on said bond.

By supplemental petition, plaintiff denied the lease to Fuessell, and alleged that Russell and Fuessell were both agents and employés of Canet. That liability could not be avoided by the supposed lease because it was void and contrary to the jitney ordinance.

The case was submitted on special issues, and the jury found: (1) That the car in which plaintiff was a passenger was operated negligently as alleged in plaintiff's petition; (2) that such negligence directly caused the accident and the injuries to plaintiff alleged in plaintiff's petition; (3) that the car and its steering gear was in a defective condition as alleged in plaintiff's petition; (4) that it was negligence on the part of Canet "to have and permit said car to be in such defective condition"; (5) that this negligence directly caused the accident and injuries to plaintiff alleged in his petition; (6) that H. J. Fuessell was operating the car for Canet on a percentage basis, with a guaranty of $2.50 per day; (7) that there was no agreement between Canet and Fuessell that Fuessell was to secure some one to relieve Fuessell at meal times; (8) that the amount of damages which would compensate plaintiff was $5,000.

Upon such verdict judgment was entered in favor of plaintiff against all the defendants for $5,000, and the Western Indemnity Company was given judgment over against Canet for said sum. This appeal is by Canet and the Western Indemnity Company.

Appellants contend: (1) That the court erred in overruling their motion to enter judgment in their favor on the findings of the jury; (2) that the judgment is contrary to the evidence and the findings of the jury. Both contentions are based on the theory that as the jury found there was no agreement between Canet and Fuessell that the latter was to secure some one to relieve him at meal times, the car at the time of the accident was being operated by one not the agent or employé of Canet, and therefore neither Canet nor the Indemnity Company would be responsible for plaintiff's injuries.

We deem it unnecessary to consider many of the questions presented and discussed in the briefs. The amount of the judgment does not exceed the bond sued upon, and we believe that both of the appellants are liable to the extent of the bond by virtue of the provisions thereof, regardless of whether Russell's employment by Fuessell was authorized. Canet procured license and was granted a franchise to operate his automobile in the business of a common carrier on the streets of the city of San Antonio. The franchise was granted to him upon certain conditions, compliance with which was required by ordinance. He was required to give a good and sufficient assurance in writing, "undertaking and guaranteeing that such

vehicle or vehicles shall be operated with due care for public safety." The ordinance provided further:

"Each such bond or policy of insurance to be conditioned that the holder of such license shall and will well and truly pay to the mayor of said city, and to his successors in office, for the benefit of each such person injured by reason of the negligent operation of such vehicle, or on account of any injury which any person may, while employed on such vehicle by the licensee, do or negligently allow to be done to any passenger, or pay directly to any passenger so injured, any amount or amounts which may be awarded by final judgment of any court of competent jurisdiction on account of any such injury against any person owning or operating any such vehicle."

Pursuant to such ordinance he gave the bond sued on which contained the following provision:

"The condition of this obligation, however, is such that whereas it is possible that injuries to persons may occur by reason of the negligent operation of said vehicles for the purposes of such business, that other injuries may be wrongfully done or negligently allowed to be done to passengers by persons employed by said principal on such vehicles, now, if the said principal shall well and truly pay the mayor of said city, or to his successors in office, for the benefit of each person so injured, or pay directly to such person, all damages on account of any such injury, which such person may suffer, or which may be awarded to such person by any court of competent jurisdiction, then and thereupon this obligation shall, in so far as concerns such claims and damages so paid, be and become satisfied and of no effect, but in all other respects shall continue in full force and effect."

The language, "injuries to persons may occur by reason of the negligent operation of said vehicles for the purposes of such business," provides for all injuries caused by the negligent operation of the vehicle, whether to passengers or others, while the vehicle is being operated for the purposes of such business. By the use of the words, "injuries to persons," instead of "passengers and others," the writer of the bond was consistently following up what he had said in the preceding paragraph, wherein it is stated that the obligation is "for the benefit of any person or persons injured," and the further statement is made that by referring to persons injured is meant not only passengers but also others using the streets and public places. The language, "that other injuries may be wrongfully done or negligently allowed to be done to passengers by persons employed by said principal on said vehicles," makes provision for a different class of injuries than those resulting from negligent operation. It relates to injuries wrongfully done to passengers by employés and injuries negligently allowed by employés to be done to passengers, and was evidently designed to protect passengers from insults and assaults by employés or by other passengers. In subdivisions 17 and 18 of section 12 of the ordinance, it is provided that the driver shall maintain good order, and shall forbid and caution against the use of improper language and vio-

lent or indecent conduct on the part of passengers, and it is also made an offense for passengers to engage in such improper conduct. In subdivision 21 the driver is prohibited from addressing any remarks to passengers further than necessary to collect fares and receive and discharge passengers. These provisions are referred to for the purpose of showing that the writer of the ordinance had in mind the injuries to which we think that portion of the bond relates, in which employés are mentioned.

By the plain language of the bond there is created a broader liability for the first class of injuries than for the second, which may or may not be justified, but we are not concerned with the motives impelling the writer of the ordinance to make the distinction. It may be argued that, if the driver is placed in charge without authority, the vehicle is not being operated for the purposes of such business, but it appears to us that when the vehicle is being used, as this one was, to fulfill the requirements of the ordinance requiring its operation upon certain schedules under penalty of forfeitures of license, the plain provision of the bond is being complied with. As the business is a hazardous one, and the right to engage in it a franchise, the owner of the car can be required to give assurances for the safety of the public, and it is neither unjust nor unlawful to make him responsible for injuries occurring while his franchise obligations are being complied with, regardless of whether his servant or agent had authority to delegate the duty to the one who undertakes its performance.

The ordinance, in effect, provides that, if the owner's servant puts another man in his place without authority from the owner, the owner shall suffer for such substitute's negligence rather than the passengers and public, who have a right to assume that the car would not be intrusted to any one to carry on the business unless he was the employé of the owner.

There is no merit in the third assignment. The judgment is affirmed.

⬤=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes